## Ward Industries Corp. v. Bizzy Bee Cleaners, Inc.

*Bulleit & Bulleit*, for plaintiff.

*Brown, Swope & MacPhail*, for defendant.

SHEELY, P. J., May 15, 1965.—We have before us in this action of replevin a motion by defendant to strike off the complaint filed by plaintiff and to quash the action.

On June 9, 1964, plaintiff filed a praecipe for writ of replevin with bond for certain described items of drycleaning equipment in the hands of defendants. No counter bond having been filed the equipment was officially turned over to plaintiff. On October 24, 1964, plaintiff filed its complaint and, on November 19, 1964, defendants filed their motions to strike the complaint and to quash the action.

In its complaint plaintiff alleged that on October 25, 1960, it conditionally sold all the property involved to Bizzy Bee Cleaners, predecessors of the corporate defendant, under a conditional sales contract providing for monthly payments of the purchase price and reserving title to the property in plaintiff until the total purchase price was paid in full. A copy of the agreement is attached to the complaint. It is alleged that there was a default in the payment due on May 5, 1963, and in subsequent installments, and that there is due plaintiff the sum of $13,390. The bringing of the replevin action is alleged as is the delivery of the goods to plaintiff, and plaintiff prays for a judgment declaring that it is entitled to possession of the property.

Defendants' motion is based on the allegation that the goods seized are exempt from seizure and that the writ of replevin is void in that the goods are protected by virtue of the Act of April 3, 1779, 1 Sm. L. 470, sec. 2, 12 PS §1845, in that the goods were the subject of a levy for taxes due to the United States of America and to the Commonwealth of Pennsylvania as therein set forth.

· At the outset it is noted that this question cannot be raised on a motion to quash the writ but must be raised by preliminary objections to the complaint: Pennsylvania Rule of Civil Procedure 1078; Goodrich Am. 1078-1. Section 2 of the Act of April 3, 1779, under which defendants are proceeding, is suspended insofar as it relates to the procedure of quashing writs of replevin for property taken in execution: Pa. R. C. P. 1456(3). Defendants' motion might be dismissed for this reason alone.

Even more important is the question of whether defendants are in a position to raise this question at all. The case presents an unusual situation on the pleadings. Defendants, who do not deny that they bought the equipment on a conditional sales contract

and that they are in default thereon, say, in effect, that the conditional vendor cannot enforce its contract against them and recover its property because they have also failed to pay certain taxes to the United States of America and the Commonwealth of Pennsylvania and these governmental bodies have secured liens on the property. According to their argument this would be true regardless of how large the value of the property might be in proportion to the amount of the liens. What interest defendants would have under the circumstances does not appear.

Section 2 of the Act of April 3, 1779, was passed to overcome a particular evil. It provides: "All writs of replevin granted or issued for any owner or owners of any goods or chattels, levied, seized or taken in execution, or by distress, or otherwise, by any sheriff, naval officer, lieutenant or sub-lieutenant of the city of Philadelphia, or of any county, constable, collector of the public taxes, or other officer, acting in their several offices, under the authority of the state, are irregular, erroneous and void. . . ." In Shaw v. Levy, 17 S. & R. 99 (1827), it is said: "The motives for passing this highly beneficial act are set forth in the preamble, by the legislature themselves, to be, to remedy an abuse which had prevailed, in granting writs of replevin, for goods and chattels taken in execution, and for fines and penalties due the commonwealth, to the delay of public justice, and to great vexation of the officers concerned in taking or levying the same. . . . It is intended to prevent delay, and also for the security of the officer concerned in the levy. The least reflection will serve to show the mischief to which such a practice must necessarily lead; so much so, that it is impossible to foresee the extent to which a creditor may be delayed in his just demands, by a litigious and fraudulent debtor. An execution, which is the end of the law,

would be only the commencement of a new law suit, and so, *toties quoties*, as his goods were taken in execution by the public officer."

The act was never intended to protect the debtor and to permit him to retain goods owned by another simply because a third party had a lien upon the goods. The goods in controversy here were not in the possession of any public officer under levy or in the possession of any custodian for him. The goods were in the possession of defendants subject to the liens acquired by the United States of America and the Commonwealth of Pennsylvania by virtue of their liens filed. [At the argument counsel for the United States stated that the government does not take the position that the goods were under levy, but that its lien attached to the goods irrespective of a levy.] The goods were not about to be sold in any proceeding in which plaintiff could have asserted its rights and might remain in their present situation for an unlimited period of time. Clearly the Act of 1779 was not intended to cover this type of situation.

The proper procedure here seems clear. Defendants may file an answer to plaintiff's complaint setting up any defense they might have to plaintiff's claim. If they are successful a judgment in their favor would be entered for the value of the goods replevied which judgment can be collected from plaintiff's bond. If they are unsuccessful judgment would be entered in favor of plaintiff. The Commonwealth of Pennsylvania and the United States Government may intervene as parties under Pa. R. C. P. 2327 or 2327 (4) and assert their rights as lienholders against the property. A lienor "must be given the right to intervene, if he desires to protect his lien rights against the goods through a conditional verdict. The lienor will intervene in order to become a 'party' to the action, and to have his

own rights adjudicated. He cannot be in a position to file an answer containing 'new matter' asserting his lien, if he is denied the right to become a party through intervention": Goodrich Am. 1076(a)-1. If the lienholders, or either of them, establish their or its right to a lien, a conditional verdict would be rendered under Pa. R. C. P. 1082(c) : "If any party is found to have a lien upon the property the court may enter a conditional verdict in order to enforce the rights of all parties." If plaintiff were successful in the initial action against defendants and it was found a lienholder had a valid lien which took priority to plaintiff's claim, a verdict would be rendered in favor of the lienholder for the amount of its lien. If defendants were successful in the initial action of plaintiff, judgment could be rendered for defendants subject to the rights of the lienholder.

At the time of argument defendants also asserted that unless the security agreement between them and plaintiff was perfected by proper filing it was invalid as to defendants, but cited no authority for this proposition. Except as to certain procedures the Uniform Commercial Code does not affect the rights of the parties as between themselves. As stated in the Uniform Commercial Code Comment, 12-A PS §9-101: "The rules set out in this Article are principally concerned with the limits of the secured party's protection against purchasers from and creditors of the debtor. Except for procedure on default, freedom of contract prevails quite generally between the immediate parties to the security transaction."

And now, May 15, 1965, defendant's motion to strike the complaint and quash the action is overruled and defendants are allowed 20 days from this date in which to file an answer to plaintiff's complaint.